Good morning, Judge. My name is Bruce Spencer. I represent Dr. Weber. I'd like to reserve three minutes for rebuttal if I may. Dr. Weber was a VA physician employed by the Department of Veterans Affairs and he filed a discrimination complaint, an age and retaliation complaint against the Department of Veterans Affairs. And I think it's important to remember today that it is a retaliation complaint as well as an age discrimination complaint, which means that he does not have to prove any of the actions taken against him by the VA were as a result of age in order to win a retaliation claim. And Dr. Weber did prove a valid retaliation claim in the district court. And the two things that stand out about the retaliation claim are the timing of the actions taken against him and the disparate treatment he received that other physicians at the VA didn't. In terms of timing, if you move to February of 1999, there were a couple of cases sent out for peer review for Dr. Weber, a barium enema and a CT scan. The results came back February 8th of 1999. And a couple of days later, the quality management person recommended a further review of Dr. Weber's practice. In the meantime, the VA had decided to hold a board of investigation about a pneumothorax, which is a bubble in the lung that occurred during a CT scan. And it was a CT biopsy that Dr. Weber had. By the way, he's the only physician at the VA in Montana that has ever had a board of investigation for any clinical concern. Well, what's the relevance of that? I mean, it is the only case that you're aware of. How does that prove discrimination? That shows disparate treatment. I list in my brief numerous examples of other physicians and other problems, one even death, where the VA didn't do a board of investigation. And as Judge Gould just suggested, all of that seemed to have been considered by the district court judge, all the evidence. And he issued his decision where he just basically didn't – sounds like he didn't believe anything your client had to say. And I guess we disagree that it was considered by the district court judge. And why wasn't it considered? I'm sorry, Judge. Why wasn't it considered by the judge? We don't believe that he considered it in his findings. If you read the findings, you can't see where he has considered that specific allegation, that no other physician was subjected to an administrative board of investigation, that no other physician had hand-picked cases set up for peer review. So what is the significance of finding number 31, where he wrote, the record in this case is void of any evidence that Weber's age played any role whatsoever in any decisions made by – made or actions taken by Arvinettes in the decisions to reassign, blah, blah, blah, goes on and on. 32 is a follow-up. And I think – What do you make of those? Well, it's a conclusion. He doesn't specifically address the factual allegations that we presented forth. And I think that particular finding addresses the issue that I just brought up right at the beginning here. This is also a retaliation claim. And even if the judge didn't find any evidence that age was a factor in the actions that occurred against Dr. Weber, Dr. Weber still presented a valid prima facie case for retaliation because of the issue we were just talking about, the disparate treatment between Dr. Weber and other physicians. So here's another – here's another statement in that same paragraph 31, the last sentence. The record is likewise void of evidence that Weber suffered retaliation for engaging in EEO activities. Now, what do we do with that? I don't believe the record is void. There's lots of evidence that Dr. Weber suffered retaliation for engaging in EEO activities. What the district court wanted, and I can't blame him, I wish I had had it for him, was a witness who would come in and say, yes, we did this because of his age, or, yes, we did this because he filed discrimination complaints and engaged in protective activity. No witness came up and said that. Rarely are you going to find that, and if we'd had that, frankly, we probably wouldn't have had a trial. So you have to look to other evidence. And we believe that other evidence was presented, and the disparate treatment is a huge factor. Counsel, your argument would have some resonance with me if the district court had given a summary judgment. I have more difficulty with it when he conducted a bench trial and then made his findings. All right, so at least in terms of my assessment, explain to me why we should reverse with these findings after a trial. I understand. Because Dr. Weber did present evidence of retaliation and discrimination, and the record is not void of any evidence. He presented a prima facie case, and the court should have said that he presented a prima facie case, then allowed the VA to come up with a non-legitimate, non-discriminatory reason. And Dr. Weber presented evidence that those are pretexts, and the pretext involves the timing, as I mentioned before, and the disparate treatment. And the timing of the issues, if you've read that part of my brief, I mean, as soon as he complained, as soon as he filed, cases are pulled. And the VA says, well, we want to review more cases, but they wait until after he's filed an EEO complaint to pull 11 cases. When they could have done it, it takes 20 minutes to pull them, and the whole review could have been done in six weeks. Do you think the district court judge found that he had made a prima facie case for disparate treatment and or retaliation? I don't believe he did find that. I think he should have found that. So what do you think he did here? How do you sum up what the district court did? I think he simply made a conclusion that because Dr. Weber didn't have direct evidence of discrimination and retaliation, that as a witness who was going to come in and testify, yes, we discriminated because of age, and yes, we retaliated, that he didn't present evidence for a prima facie case. And that is not the law. That's not required. You don't have to have direct evidence. You can present that indirect type of evidence, which we did. We believe we made that prima facie case and that the court should have made. Could it be said that what the district court judge, as Judge Gould just suggested, that after listening to all the evidence, judging the credibility of the parties, the witnesses, that in the end, when it got down to the bottom question, the ultimate question, he just found that the evidence was insufficient to show that Dr. Weber had suffered a disparate treatment or that they had retaliated against him? The district court could do that, yes. We weren't given that chance, I don't believe, in these findings. He didn't evaluate all of the evidence in the findings. There was a conclusory statement that the record is void of evidence, and we don't believe that is the case. Yes, the district court could have done that and said, you're still going to lose. I understand that. Counsel, you wanted to have three minutes for rebuttal. Right now you've got two. Okay. So I'll give you an extra minute. Thank you, Judge. I'll stop. Good morning again, Your Honor. Lori Sook, representing the Secretary of Veterans Affairs. Ms. Sook, hold on just one second, because with this system, as I understood it, you should be on our screen after a few seconds. But right now you're not on the screen. So hold on. Your Honor, I think I have to continue to speak. Voice activated. Am I now showing on your screen? No, and I understood you were supposed to be on the screen after three seconds. So hold on a minute. Can we get our technical guy on? He's working on it right now. He knows. Okay. Ms. Sook, I guess I'll give you a choice. If you want to proceed as if you were on the phone, we can go ahead or we can wait for a few minutes to see if you're on. Your Honor, I would be just fine in proceeding, as long as you hear me. Yeah, why don't you go ahead? I think the panel feels comfortable. Thank you, Your Honor. The bottom line here is the evidence at trial presented by Dr. Weber failed to establish that he had suffered age discrimination under any of the theories, disparate treatment, hostile work environment, or retaliation that he advanced. In this case, the Secretary believed that Dr. Weber, in fact, failed to make a prima facie case. But as Judge Paez pointed out, in this case, the district court actually came down and just on the basis of all of the evidence presented, including the evidence presented by the Secretary, made a bottom line decision. So in essence, the prima facie case was in place because the Secretary went forward with its legitimate, non-discriminatory reasons for all of the actions complained of. And in the end, the district court then made the finding. And it's important to note that the finding made by the district court was not just void of any evidence presented, because certainly Dr. Weber testified. What the district court concluded was the record was void of any evidence that the decision-making by the Secretary of Veterans Affairs was affected in any way by age discrimination. And then specifically singled out one theory of retaliation in the finding 31. In this case, too, there is some interesting corollary paths that were taken in terms of the action, and it's very important not to confuse those. There was a peer review process and there was a board of investigation. The peer review process was something that was done by Dr. Arvanites on Dr. Weber's files and vice versa. And the reason that any step was taken further was because there was a discrepancy between Dr. Weber's reading and Dr. Arvanites' reading. There was a tie and quality assurance, and this is set forth in Lynette Nyland's testimony. She is in exhibit book number one, pages 197 to 237, and specifically 225 to 237 sets forth these different tracks. She explains the peer review process and how quality assurance took over that review and had an independent review of the two cases. That came back with troubling results, so quality assurance asked that additional files be sent out. And the timing of those additional files, in February the request was made for additional files. They were then sent in May of that same year. And the timing of the EEO complaint was April, but that was the informal complaint. EEO then notified the veteran administration in Fort Harrison at the end of April. But Lynette Nyland of quality assurance testified, I did not know about the EEO complaint at that point. There was a notification made, but she did not know that there was an EEO complaint pending. Now, Ms. Sook, let me ask you a question. Okay. So I guess your point of that is that she wasn't aware of the EEO, and therefore there could be no retaliation, I guess, is what your point is, right? Exactly. Now, if you go to the findings of fact and conclusions of law that the judge issued, he doesn't really say that. He just gets to the bottom line. He definitely, there's no doubt that these findings of fact are very summary. Right. Now, are his findings consistent with what we've said a district court should do, for example, in Sumner and in Norris? Are you familiar with those cases?  His findings are specific enough. Well, he doesn't go through the intermediate steps of how he got to the bottom line. He does not specifically, Your Honor, but he certainly in his findings points to specific pieces of evidence. And his findings are clearly supported by the trial testimony. Now, you just went through a moment ago in the recitation of that review of the evidence. If I were to go to his findings, where would I find that sort of referred to, even if it is summary? Well, it would be the finding that you alluded to, that any of the decision-making that the Veterans Affairs did was void of any evidence of age discrimination and or retaliation, which is finding 31, I believe. So it's all-encompassing. It's all-encompassing. Now, I noticed when I looked at the record here that the VA, I don't know if you tried this case or not, or who tried it, but somebody submitted proposed findings and conclusions of law to the district court judge. And if you look at what he adopted and look what was submitted, he actually adopted a good number of the findings that were proposed, but he added paragraphs 31 and 32, because apparently what was submitted to him he didn't think was adequate enough. But I also noticed that in the conclusions of law, they were extremely, what you suggested that he do, was extremely perfunctory. And so then he adopted from the defendant's proposed findings and conclusions of law a set of conclusions laying out the basic framework, but then he never gets to an analysis of the framework. It was kind of a patch quilt kind of deal here. It's hard to follow. Unless you go to the bottom line and say the bottom line is okay, what he did here leaves a lot to be desired. Your Honor, in this case, it is clear that the judge's findings were summary and were not lengthy and fact-specific about each parsing out each level of the analysis that you go into. But he certainly did make findings about specific actions that were taken by Veterans Affairs, such as the summary review board decisions, such as the board of investigation. If you will, the sentinel events, the sentinel employment decisions that were made. And then he, in summary, found that there was, it was void of any evidence of age discrimination or retaliation. Okay, so do I take that, hold on, do I take that statement to mean that he did not find that Mr. Weber made a prima facie case of retaliation or of disparate treatment or of hostile work environment? He didn't spell that out, Your Honor. That was an argument that the secretary made. No, I do not believe that you can make that finding, because otherwise, why would the judge even have to make a finding that the secretary made? He did not put forward legitimate non-discriminatory reasons. That wouldn't even come into play without a prima facie case. So I think you can take away from that that he didn't adopt the secretary's suggestion to him that a prima facie case was made. He, in fact, found that second step, that there were legitimate non-discriminatory reasons brought forth. That's true, though. He then did not assess, he didn't literally mention pretext. So he didn't, he didn't get to the third step of the McDonnell-Douglas framework. Well, Your Honor, what he... I had actually, Ms. Zuck, I had read his opinion to be on the premise that there was no prima facie case. But you're right, you know, in a sense, it doesn't make sense to talk about the legitimate reasons for a prima facie case. That the hospital or agency put forward if there's no prima facie case, but it also doesn't really make sense to give a conclusion after stating those reasons without assessing pretext. Your Honor, again, I believe he really put the analysis in a very conclusory fashion. And evidence of pretext, if believed, was brought forward by Dr. Weber after our legitimate non-discriminatory reasons. And he, his findings impliedly tell you that, as was pointed out, he did not believe Dr. Weber. And that's not such a huge leap, because the great weight of the evidence here did not support Dr. Weber. Well, if he didn't believe Dr. Weber at all, then one could conclude from that that he found that Dr. Weber did not make out a prima facie case at the third step, as Judge Gould just said. And that's exactly what the secretary asked him to find. What my point is... Well, if that's what you wanted him to do, you should have provided him with a clear set of proposed findings of fact and conclusions of law. Look at the ones you submitted to him. I agree, Your Honor. They could be better. Okay. Well, I think the time is just about up. And unless another judge has a question, Ms. Suk, we'll wait to hear you in the next case. I guess you're not in the next case. You'll actually hear Mr. Derry, Your Honor. Thank you. Well, thank you for joining us. And we're sorry the video feed didn't work. But we did get to see you at the start, and we've seen you before, and we'll see you again. Thank you, Your Honors. You're welcome. So, Mr. Spencer, go for it. Thank you, Judge. I think that retaliation and pretext are the issue in this case, and that there weren't findings made on those issues. And that's why Dr. Weber is here today. That we don't have findings that he did or didn't make a prima facie case, that the VA did or didn't have a legitimate non-discriminatory reason, and that Dr. Weber is able to come in and provide, you know, there are different kinds of evidence. He doesn't have to provide direct evidence of pretext. He can use circumstantial evidence. And the circumstantial evidence in this case is very strong that pretext existed. He was treated differently from other physicians. That's disparate treatment. Absolutely relevant for both discrimination and retaliation. And the timing of how things happened. You know, it's easy to say Lynette Nyland was supposed to pull 11 cases and didn't get around to it. But she didn't get around to it until after the discrimination complaint was known by the VA. She didn't get around to it until after the Board of Investigation found that Dr. Weber shouldn't be discharged. Finally, they got around to it after the Board of Investigation said no discharge and Dr. Weber filed the EEO action, protected activity. Finally, they get around to handpicking 11 cases. By the way, she was concerned about a barium enema and a CT scan. None of those 11 cases related. Let's say the district court had said I've considered all the direct and circumstantial evidence and I've concluded that the reasons the VA gives are not pretextual. Then your client loses, right? If we have some specific findings that are supported by evidence, the court can do that. I mean, I can't stand here and legitimately say to you both that the court can't rule the way it wants to rule. But I have no way of knowing how the court will do this. So just to clarify, are you saying that the court didn't make the required findings or are you saying there's no evidence from which the court could have found an absence of pretext? To some extent, both. I don't believe the court made the required findings and I believe the evidence is so overwhelming that disparate treatment and that the timing was so close to the protected activity that the court had no choice but to find retaliation. We're going to have to ask you to wrap up in 16 seconds. Fair enough. As I said when I started, I think this is both an age discrimination and retaliation claim. And remember, you do not have to prove age discrimination to win retaliation. The court also did not address any post-termination retaliation. Thank you, Judge. Thank you very much. Weber v. Nicholson shall be submitted and we thank counsel. We'll now turn to Weber v. Department of Veterans Affairs. Again, we're set for 10 minutes per side. On this one we have Mr. Spencer again on behalf of Dr. Weber and the Department of Veterans Affairs. We have Mr. Darragh. Good morning, Your Honor. George Darragh. We're going to do your argument on the audio because we don't have your picture, but we will just proceed that way. Excuse me, Your Honor. During the previous argument, our staff contacted the technical person there at the court and they asked me to speak to see if this activation was going to activate the camera or not. So I wanted to see if it's working or not. Right. It's not. We're not seeing you. I assume you're seeing us. Yes, I can see you fine. Yeah. Well, we will let you describe yourself if you want. I think we're going to have to go ahead with the limits of our technology. I'm sorry about that. But we'll let Mr. Spencer speak first.
judges: Gould, Paez, Strom